## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

FREDERICK E. NATICCHIA,

     **Plaintiff,**

vs.                          **Case No. 8:04-CV-1518-T-27EAJ**

JO ANNE B. BARNHART,
Commissioner of
Social Security,

     **Defendant.**

_____/

### REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability, Disability Insurance Benefits, and Supplemental Security Income.[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] The district court has referred this matter to the undersigned for consideration and a Report and Recommendation. <u>See</u> Local Rules 6.01(b) and 6.01(c), M.D. Fla.

applicable legal standards.  <u>See</u> 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  <u>See</u> <u>Goodley v. Harris</u>, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  <u>See</u> <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  <u>See</u> <u>Jamison v. Bowen</u>, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff alleges an onset of disability on March 20, 2000 due to high blood pressure, diabetes, surgery on carotid arteries, tremors, dizziness, and mental impairments, including depression. (T 17, 85)  Fifty-six years old at the time of the ALJ's decision, Plaintiff has a high school education and has past relevant work as a service technician and auto mechanic. (<u>Id.</u>)  A hearing was held before the ALJ on January 13, 2003. (T 315-364)

2

In the February 28, 2003 decision denying benefits, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date and continued to meet the insured requirements of the Act through the date of the ALJ's decision. (T 24)   The ALJ determined that Plaintiff had the following severe impairments: "dizziness and osteoarthritic hip and back pain." (T 20)   The ALJ concluded that Plaintiff's "mild cognitive impairment" was non-severe. (Id.) The ALJ decided that Plaintiff's impairments did not meet or equal an impairment listed in the Listing of Impairments. (Id.)   Noting that Plaintiff's testimony regarding his limitations was not entirely credible, the ALJ further determined that Plaintiff retained the residual functional capacity ("RFC") to perform a "significant range of light work." (T 24)[2] Plaintiff was unable to perform his past work; however, relying on the testimony of a vocational expert ("VE"), the ALJ decided that Plaintiff retained the capacity for work that existed in significant numbers in the national economy, such as troubleshooter, gate guard, security monitor, and school bus monitor. (T 24-25)   Therefore, the application for disability benefits was denied.  (Id.)

---

[2] The ALJ determined that Plaintiff "lacks the residual functional capacity to lift and carry more than 20 pounds occasionally and 10 pounds frequently." (T 24) The ALJ further noted that the "claimant also has non-exertional limitations which include occasional climbing stairs, but never ladders, avoid moderate exposure to noise due to limited hearing." (Id.)

On May 7, 2004, the Appeals Council denied Plaintiff's request for review. (T 4-6)  Accordingly, the Appeals Council allowed the ALJ's decision to stand.

Plaintiff argues that the Commissioner erred in (1) failing to acknowledge the existence of all severe impairments and therefore failing to consider the combined effect of Plaintiff's multiple impairments, (2) failing to adequately assess Plaintiff's residual functional capacity, (3) failing to satisfy her burden of establishing the existence of alternative work Plaintiff could perform despite his impairments, and (4) finding Plaintiff's allegations less than totally credible.  In addition, Plaintiff asserts that a remand under sentence six of the Act is appropriate due to the revelation of new and material evidence not submitted during the administrative process (Dkt. 5 at 13-28).

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

**II.**

**A.**   Plaintiff submits that the Commissioner did not consider the combined effect of all his impairments, both severe and non-severe, as required by Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) and other cases.  Specifically, Plaintiff argues that the ALJ improperly determined that his mental impairments of depression, anxiety, and cognitive difficulties as well as his physical

4

impairments of hand tremors and gait problems were not severe.

The Regulations provide a general description of "severe" impairments:

> You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. . . .

20 C.F.R. § 416.920(c).

The above Regulation concerning "severe" impairments is further refined by the following definition of "non-severe" impairments:

> Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your basic work activities. (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(a).

In <u>Brady v. Heckler</u>, the Eleventh Circuit described a "non-severe" impairment as "a slight abnormality which has such a

minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 724 F.2d 914, 920 (11th Cir. 1984).  Further, as stated in <u>McCruter v. Bowen</u>, "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." 791 F.2d 1544, 1547 (11th Cir. 1986).

The issue before this court is whether the evidence of record in the case <u>sub judice</u> provides substantial evidence for the Commissioner's finding that Plaintiff's mental problems and tremor as well as gait problems were non-severe or "merely a slight abnormality with minimal effects on [his] general ability to work." <u>Brady</u>, 724 F.2d at 920.

In the present case, substantial evidence supports the ALJ's finding that Plaintiff's anxiety, depression, and cognitive difficulties as well as Plaintiff's tremor and gait problems were non-severe.

### **Mental Impairments**

Plaintiff argues that his impairments of anxiety, depression and cognitive difficulties are severe impairments.  In the decision denying benefits, the ALJ specifically found that Plaintiff's cognitive difficulties were not severe. (T 20)  The ALJ failed to make a finding regarding Plaintiff's anxiety and depression,

therefore, the ALJ is deemed to have determined that these impairments were not severe in nature.

The ALJ's determination that Plaintiff did not suffer from cognition problems or other mental problems is supported by substantial evidence.

On October 26, 2000, Geoffrey Kanter, Ph.D. ("Dr. Kanter") performed a neuropsychological consultative evaluation of Plaintiff. Dr. Kanter's consultative report indicates that Plaintiff was administered twenty tests, including the Wechsler Adult Intelligence Scale, 3rd Edition (WAIS-III), Hooper Visual Organization Test, Beck Anxiety Index (BAI), Minnesota Multiphasic Personality Inventory-II (MMPI-II), and World Memory Test (WMT), as well as many other tests. (T 123)

Dr. Kanter noted that Plaintiff owned a Harley motorcycle and that Plaintiff enjoyed "playing the 'biker' role." (Id.) Dr. Kanter remarked that Plaintiff showed no hostility, guardedness, paranoia, thought disorder, delusion or mania, and that Plaintiff exhibited appropriate social skills. (Id.) Dr. Kanter determined that Plaintiff had a "low average" full scale IQ of 89. (T 124) Dr. Kanter stated "As, such, there is no evidence of significant overall cognitive decline." (Id.) In addition, Dr. Kanter found that Plaintiff's ability to hold information in memory, process it efficiently, and formulate a response" was intact. (Id.)

Dr. Kanter's consultative report clearly supports the ALJ's finding that Plaintiff's cognitive impairments were not severe.

In addition, the reports of the non-examining State-Agency Physicians also support the ALJ's finding that Plaintiff's cognitive difficulties, as well as Plaintiff's anxiety and depression were not severe.

Carol Deatrick, Ph.D. ("Dr. Deatrick") completed a Psychiatric Review Technique form on December 15, 2000 in which she determined that Plaintiff had affective disorders and organic mental disorders, but that such impairments were not severe. (T 160) Dr. Deatrick found that Plaintiff had major depression. (T 163) However, Dr. Deatric determined that Plaintiff exhibited no functional limitations with the exception of "mild" limitations with regard to maintaining concentration, persistence, or pace.[3] (T 170)

In addition, the Mental Residual Functional Capacity Assessment of Plaintiff authored by James Mendelson, Ph.D. ("Dr. Mendelson") on March 19, 2001 documented only moderate limitations.[4]  Dr. Mendelson emphasized that Plaintiff's medical

---

[3] Specifically, she found that Plaintiff is not restricted in his activities of daily living, that he has no difficulties maintaining social functioning, only mild difficulties maintaining concentration, persistence, or pace, and that he has had no episodes of decompensation. (T 170)

[4] Specifically, Dr. Medelson determined that Plaintiff was moderately limited in the ability to carry out detailed

records lack evidence of treatment for a mental disorder: "The claimant has no psychiatric history-having never sought, received, or been referred for formal mental health treatment.  There have been no psychiatric hospitalizations, and no documented loss of employment ever due to a mental disorder." (T 189)

The file also contains a Psychiatric Review Technique form completed by Dr. Mendelson dated March 19, 2001.  Dr. Mendelson determined that Plaintiff had organic mental disorders, affective disorders, a memory impairment, and disturbances in mood. (T 192-193)  Dr. Mendelson's opinions concerning Plaintiff's functional limitations are slightly more restrictive than those reported by Dr. Deatrick.  Dr. Mendelson determined that Plaintiff was mildly limited with regard to his activities of daily living and in maintaining social functioning and was moderately limited with regard to maintaining concentration, persistence, or pace. (T 202)

The above reports of the state-agency physicians support the ALJ's finding that Plaintiff did not suffer from severe anxiety, depression, or cognitive difficulties.

### Tremors and Gait Problems

Plaintiff submits that the ALJ erred in not enumerating Plaintiff's tremors and gait disturbances as "severe impairments."

_____

instructions, to maintain attention and concentration for extended periods, to complete a normal work-day and workweek without interruptions from psychologically based symptoms.  (T 187)

Plaintiff argues that his gait problems stem from an "abnormal neurological process." (Id.) Plaintiff, however, fails to point to evidence in the record supporting this proposition. The undersigned has plumbed the record and did not find medical evidence supporting Plaintiff's proposition.

As will be further discussed infra, the ALJ discredited Plaintiff's complaints concerning tremors and gait stating: "Interestingly, the claimant demonstrated an unsteady gait during examinations. However, Ronald Aung-Din, M.D. ("Dr. Aung-Din"), the claimant's treating physician, observed the claimant walking normally in the parking lot, without evidence of gait disturbance and tremors." (T 21) The ALJ also discredited Plaintiff's complaints of gait and tremor impairments on the basis of the extensive activities Plaintiff stated he was able to undertake. See infra section D.

Thus, the ALJ's determination that Plaintiff's mental impairments as well tremor and gait impairments were not severe is supported by substantial evidence, and Plaintiff's argument as to this issue is without merit.

Addressing Plaintiff's blanket argument that the ALJ failed to consider the combined effect of all his impairments, both severe and non-severe, as required by Hudson, 755 F.2d at 785 and other cases, it is clear that the ALJ did, in fact, consider all of Plaintiff's impairments in full combination. The ALJ considered

the combined effect of plaintiff's impairments, as evidenced by his written decision.   The ALJ found that "The claimant has an impairment or a combination of impairments considered 'severe' based on the requirements in the Regulations . . ." (T 24, finding no. 3)   This language has been held sufficient to discharge the Commissioner's obligation to consider impairments in combination. Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

Accordingly, Plaintiff's argument that the ALJ failed to consider his impairments in full combination, as well as Plaintiff's argument that he had additional severe impairments, are without merit.

**B.**   Plaintiff also argues that the ALJ improperly assessed Plaintiff's RFC in concluding that Plaintiff was capable of performing a significant range of light work. (Dkt. 5 at 20)

An RFC assessment is an evaluation of an individual's ability to engage in work-related physical and mental activities in a work setting on a "regular and continuing basis."   See 20 C.F.R. § 416.945(a)-(b).   A regular and continuing basis means full-time employment: forty-hours a week. See SSR 96-8p.[5]   An individual's RFC represents the most that individual can do despite his or her

_____

[5] The Social Security Administration's rulings are not binding on this court; however, they are binding on Administrative Law Judges and are accorded some deference.   See Fair v. Shalala, 37 F.3d 1466, 1469  (11th Cir. 1994); B.B. ex. rel. A. L. B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. Unit B April 1981); Heckler v. Edwards, 465 U.S. 870, 874 (1984).

limitations (as opposed to the least that an individual can do despite such limitations). Id. The ALJ is charged with assessing the medical evidence and determining the claimant's RFC. See Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987).

In conducting the RFC analysis, the ALJ must consider "only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p.

Plaintiff argues that the ALJ erroneously determined that Plaintiff could perform light work by failing to consider Plaintiff's hand tremors, ambulation problems, mental impairments, and other impairments when assessing Plaintiff's RFC.

Light work is defined as work requiring "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567 (b). The Regulations note with regards to light work that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." Id.

In the decision denying benefits, the ALJ assessed Plaintiff's RFC as follows:

> [C]laimant retains the residual functional capacity to perform the exertional demands of light work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten pounds; some light jobs are performed while standing, and those performed in the seated position often require the worker to operate hand or leg controls.  The evidence supports a finding that he is not able to lift and carry more than 20 pounds or more than ten pounds on a regular basis.  The claimant also has non-exertional limitations which include occasionally climbing stairs, but never ladders, and avoiding moderate exposure to noise due to limited hearing.

(T 22)(citations omitted).

The ALJ's RFC assessment is based on the evidence the ALJ determined to be credible and is supported by substantial evidence. Plaintiff argues that his tremors prevent him from being able to perform jobs requiring fine manipulation, his gait and ambulation problems prevent him from prolonged sitting and standing, and that Plaintiff's mental impairments prevent him from maintaining concentration, persistence, and pace, and that the ALJ's RFC determination should have specifically noted each of these limitations.

In the instant case, however, the ALJ's RFC is consistent with the limitations posed by Plaintiff that the ALJ fully credited.[6]

---

[6] The ALJ found that Plaintiff's "mild" cognitive impairment was non-severe.  (T 20)  As stated in <u>Brady</u>, a "non-severe" impairment is "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with

Accordingly, the ALJ's RFC analysis is supported by substantial evidence, and Plaintiff's argument is without merit.

**C.** Plaintiff also contends that the ALJ failed to satisfy his burden of establishing the existence of alternative work Plaintiff could perform despite Plaintiff's impairments. Specifically, Plaintiff argues that the jobs the ALJ found Plaintiff could preform--troubleshooter, gate guard, security monitor, and school bus monitor--are prohibited by his RFC which limits Plaintiff's exposure to noise.

Once the plaintiff has demonstrated that he cannot perform his past relevant work, the burden shifts to the Commissioner to establish that there are other jobs plaintiff can perform. Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989). In order to make this showing, the Commissioner can utilize the Medical-Vocational guidelines in 20 C.F.R. Subpart P, App. 2 if a claimant primarily suffers from exertional impairments, without significant exertional limitations. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). When nonexertional limitations are alleged, the use of a VE is preferred. (Id.) In this case, the ALJ utilized both the Grids and a VE to determine that Plaintiff was capable of the abovementioned jobs.

---

the individual's ability to work" 724 F.2d at 920. Accordingly, this court finds no error with regard to the ALJ's failure to restrict Plaintiff's RFC due to his slight mental defect.

Plaintiff argues that three out of the four jobs the ALJ determined Plaintiff could perform are prohibited by Plaintiff's RFC. Among other things, the ALJ found that Plaintiff should avoid "moderate exposure to noise due to limited hearing." (T 22) Plaintiff submits that the Dictionary of Occupational Titles ("DOT") classifies the jobs of gate guard, school bus monitor, and troubleshooter as jobs which expose workers to at least moderate noise levels.

The Eleventh Circuit announced in Jones v. Apfel, 190 F.3d 1224, 1229-1230 (11th Cir. 1999), cert. denied, 529 U.S. 1089 (2000), that "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT" and that "an ALJ may rely solely on the VE's testimony." However, in the instant case, it is not clear that the ALJ posed a hypothetical question to the VE that included the limitation regarding noise consistent with Plaintiff's RFC. Thus, this court is not able to determine whether the VE's testimony is complete and whether, if the VE were alerted to Plaintiff's noise restriction, the VE would have provided testimony in conflict with the DOT.

During the hearing, the ALJ posed the following hypothetical question to the VE:

> Assume that we have a hypothetical individual who is 53 years of age, with the education and multiple skills testified to here today as well as contained in the Agency record, who has the ability . . . to perform work except -- well, limited to occasional stairs and should

15

never be on a ladder.  And I would actually extend that
to rope and scaffolds also.  Who according to also only
to technical findings [sic] has some limited hearing of
one of his ears - - or is it bilateral?  Just according
to technical examinations but not noticed by the
Claimant.  Who should avoid concentrated exposure to
hazards and unprotected heights. . . .  Who has mild
environmental restrictions.

(T 345-346)

In response to this hypothetical, the VE determined that
Plaintiff could perform past relevant work.  The ALJ moved on to a
second hypothetical. (T 346)  The second hypothetical was based
entirely on an RFC determination generated by Dr. Aung-Din dated
August 22, 2002. (T 289) Dr. Aung-Din's RFC discusses sitting,
standing, walking, lifting, carrying, repeating movements, bending
squatting, crawling, climbing, reaching, and exposure to heights,
machines, extreme temperatures, driving, dust, fumes, and gasses.
(Id.)  Dr. Aung-Din's RFC report, however, completely fails to
mention noise.

In response to the second hypothetical, based entirely upon
the August 22, 2002 RFC report of Dr. Aung-Din which did not
discuss exposure to noise, the VE determined that Plaintiff could
perform the jobs of troubleshooter, gate guard, security monitor,
and school bus monitor, and the ALJ adopted the VE's finding in the
decision denying benefits.

The court agrees with Plaintiff that a remand is warranted on
this issue.  The hypothetical propounded to the VE whose opinions

16

the ALJ adopted did not include the restriction as to noise included in the ALJ's RFC, in violation of <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1562 (11th Cir. 1985) and other binding caselaw. Plainly, this court is unable to determine if the jobs of troubleshooter, gate guard, and school bus monitor are prohibited by Plaintiff's RFC.

Defendant points out that "even if the three jobs Plaintiff complains about are eliminated, the security monitor jobs remain." (Dkt. 8 at 18) Plaintiff counters that, although the security monitor job does not require exposure to prohibited levels of noise, it does not exist in sufficient numbers to satisfy the Defendant's burden of proof.[7]

20 C.F.R. 404.1566(a) discusses what is meant by "work which exists in significant numbers in the national economy" and states, "We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country.  It does not matter whether work exists in the immediate area in which you live; [if] a specific vacancy exists for you; or [if] you would be hired if you applied for work."

The ALJ's decision mirrors the VE testimony stating the 30,000

---

[7]  The VE testified that 30,000 security monitor positions exist nationally and that 100 of such jobs exist in Plaintiff's local region. (T 347-348)

security monitor jobs exist in the national economy and 100 exist in Plaintiff's local region.   As Plaintiff notes, the ALJ's determination may fall short of the requirements of the Regulations because the ALJ failed to state the whether the job of security monitor exists in significant numbers either in Plaintiff's local region or in several regions of the country.

This court is persuaded by the analysis Plaintiff cites from Allen v. Barnhart, 357 F.3d 1140 (10th Cir. 2004).   There, the ALJ crafted a detailed RFC for a plaintiff with spinal injuries and other impairments.   Despite placing fairly stringent restrictions on the plaintiff, the ALJ did not pose complete hypothetical questions based on the plaintiff's RFC to the VE during the administrative hearing.   Particularly, the ALJ failed to mention to the VE that Plaintiff's interaction with the public was restricted. Thereafter, the ALJ issued a decision relying on the Grids, finding that the plaintiff was capable of light work and, thus, not disabled.   In the decision denying benefits, the ALJ specified several jobs which he found the plaintiff was capable of performing, including surveillance monitor, toll booth operator, and self-service cafeteria cashier.

The ALJ's decision was reversed and remanded in Allen for several reasons: "use of the Grids contrary to RFC findings, and specification of available jobs contrary to VE testimony based on the same RFC findings."   Id. at 1146.   The reviewing court observed

18

that the jobs of toll booth operator and self service cafeteria
cashier were clearly prohibited by Plaintiff's RFC which prohibited
public interaction.  <u>Id.</u> at 1144.  Only the surveillance monitor
job remained.  Plaintiff argued that only 100 surveillance monitor
jobs existed in Plaintiff's region, and that such number was
insufficient under the Act to meet the Commissioner's burden of
demonstrating that a significant number of jobs which Plaintiff was
capable of performing existed in the national economy.

The appellate court further stated:

> Because the ALJ erroneously relied upon 800 publicly
> interactive jobs, despite the direct conflict with his
> RFC findings, he never had occasion to decide if the one
> hundred surveillance jobs alone constituted a significant
> number under the statute.  Thus, he did not give explicit
> consideration to the factors this court has recognized
> should guide the ALJ's commonsense judgement such as the
> level of [plaintiff's] disability; the reliability of the
> VE's testimony; the distance [plaintiff] is capable of
> traveling to engage in the assigned work; the isolated
> nature of the jobs; and the types and availability of
> such work.

<u>Id.</u> (internal citations omitted).

This court finds that a remand is necessary in the instant
case so that the ALJ may determine whether the jobs of
troubleshooter, gate guard, and school bus monitor are consistent
with Plaintiff's RFC, specifically, his noise restriction.  If the
ALJ concludes that the jobs of troubleshooter, gate guard, and
school bus monitor are inconsistent with Plaintiff's RFC, the ALJ
must determine whether there are sufficient surveillance monitor

jobs either in Plaintiff's region or in several other regions of the country in order to meet the Commissioner's burden of demonstrating that such jobs exist in significant numbers in the national economy.

**D.**   Plaintiff also argues that the ALJ improperly discredited his testimony concerning the extent of his limitations and his subjective complaints of pain.

The credibility of witnesses is for the Commissioner to determine, not the courts. <u>Carnes v. Sullivan</u>, 936 F.2d 1215, 1219 (11th Cir. 1991).   Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. <u>Davis v. Apfel</u>, 93 F. Supp. 2d 1313, 1316 (M.D. Fla. 2000) (citing <u>Celebrezze v. O'Brient</u>, 323 F.2d 989 (5th Cir. 1963)).[8]

Further, the Eleventh Circuit's three part "pain standard" requires the Secretary to credit a claimant's subjective pain testimony if there is (a) evidence of an underlying medical condition and (b) either (1) objective medical evidence confirming the severity of the pain resulting from the medical condition or

---

[8] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, are binding as precedent in the United States Court of Appeals for the Eleventh Circuit and for district courts within the Eleventh Circuit. <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

(2) that the objectively determined medical condition must be of a severity which can  reasonably be expected to cause the alleged pain.  <u>Landry v. Heckler</u>, 782 F.2d 1551, 1553 (11th Cir. 1986). Under the alternate prong of the pain standard, subjective pain testimony which is supported by clinical evidence of a condition which can reasonably be expected to produce the symptoms of which a plaintiff complains is itself sufficient to sustain a finding of disability.  This prong requires the Commissioner to evaluate the credibility of a claimant's testimony as to pain and to articulate a reasonable basis for rejecting the testimony if it is rejected. <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1068 (11th Cir. 1986).  The reasons must be based on substantial evidence.  <u>See</u> <u>Hale v. Bowen</u>, 831 F.2d 1007, 1012 (11th Cir. 1987);  <u>Foote</u>, 67 F.3d at 1560.

This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms." <u>Elam v. R. R. Ret. Bd.</u>, 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

During the administrative hearing, Plaintiff stated that he has a handicap sticker on his car because he is unable to "walk any distances." (T 326) Plaintiff also complained about getting dizzy when he looks up and having balance problems. (T 330, 334) He stated that his memory was "gone" and that he gets confused very

easily. (T 331, 334)  He also stated that he has tremors that are exacerbated when he gets aggravated. (T 330)  Plaintiff added that his tremors bar him from eating with a fork and that he prefers to drink out of a bottle rather than a cup due to the severity of his tremors. (T 333)  Plaintiff further stated that he cannot sit for long periods of time because he has painful, degenerating hips. (T 331) He stated that he has constant low back and hip pain. (T 335) Plaintiff submitted that when his hips start hurting, he has to lie down or take a pill.  (T 331) Further, Plaintiff stated that he needs the support of a cane to stand up for any amount of time longer than thirty minutes. (T 331) Also, Plaintiff noted that he has frequent chest pains and that his medication, nitroglycerine, has the side effect of severe headaches. (T 336-337) Plaintiff described dizziness as the main side-effect of the combination of medications he takes. (T 337)

The ALJ discredited Plaintiff's testimony on the basis of Plaintiff's own statements about his activities of daily living. Plaintiff stated at the hearing that he cleans the inside of the house during his waking hours and makes sure the outside of the house is tidy as well.  He cleans the kitchen, washes dishes and clothes, and runs the vacuum. (T 327) He mows the lawn and weeds.[9] (T 327-328) Plaintiff also drives a truck and motorcycle. (T 292)

---

[9] Plaintiff stated that he uses a riding mower to cut the grass (T 333)

In discrediting Plaintiff, the ALJ placed a strong focus on Plaintiff's ability to drive: "[W]hile the claimant alleges difficulty with concentration, he drives; and even minimal operation of a motor vehicle requires substantial attention and concentration, understanding, remembering and carrying out of complex functions, and substantial exercise of independent judgment." (T 21-22)

Plaintiff's own account of what he is still able to do supports the ALJ's decision to discredit Plaintiff's statements concerning his professed inability to work.

In addition, the ALJ relied on the reports of examining and treating physicians to discredit Plaintiff's statements.

The ALJ found to be particularly probative the October 1, 2001 follow-up visit report of Plaintiff's neurologist, Dr. Aung-Din.[10] Inter alia, Dr. Aung-Din's October 1, 2001 report states, "I had the opportunity to see [Plaintiff] walk in the parking lot unbeknownst to him and he was quite steady and no evidence of gait disturbance or tremors. On formal examination in the office, however, he began to exhibit tremors of the right hand and

---

[10] Although the ALJ discredited Dr. Aung-Din's opinions because his medical findings were "not supported by medically accepted clinical and laboratory diagnostic techniques and [are] inconsistent with his own evidence in the record." (T 20) The ALJ credited Dr. Aung-Din's observation that Plaintiff walked in a steady manner with no tremors when he thought no one was watching him, and the ALJ relied upon this observation in discrediting Plaintiff. This court finds no fault with this approach.

unsteadiness of gait but never fell.  There was a significantly high functional component to his examination. . . . In fact, he looks quite fit." (T 292)  Dr. Aung-Din's report supports the ALJ's statement that Plaintiff's "behavior and documented inconsistencies are not indicative of someone whose physical and mental impairments are severe enough or so disabling to render him unable to work." (T 22)

In addition, the ALJ discredited Plaintiff on the basis of the various reports of the non-examining State-Agency physicians.  On December 9, 2000 A.E. Archibald-Long, M.D. ("Dr. Archibald-Long") completed a Physical Residual Functional Capacity Assessment and determined that Plaintiff had no exertional limitations, no manipulative limitations and no visual limitations, but determined that Plaintiff should avoid climbing due to dizziness, had limited hearing, and should avoid exposure to noise and hazards.  (T 152-159)[11]

Further, as discussed supra, Dr. Deatrick's December 15, 2000 Psychiatric Review Technique form found Plaintiff had only non-severe affective disorders and organic mental disorders. (T 160) Dr. Deatric determined that Plaintiff exhibited no functional limitations with the exception of "mild" limitations with regard to

---

[11] On April 17, 2001, Hilda Tung, M.D. completed a Physical Residual Functional Capacity Assessment noting limitations identical to those found by Dr. Archibald-Long. (T 206-213)

maintaining concentration, persistence, or pace.[12] (T 170)

In addition, Dr. Mendelson's March 19, 2001 Mental Residual Functional Capacity Assessment of Plaintiff documented only moderate limitations. Dr. Mendelson emphasized that Plaintiff's medical records lack evidence of treatment for a mental disorder: "The claimant has no psychiatric history- having never sought, received, or been referred for formal mental health treatment. There have been no psychiatric hospitalizations, and no documented loss of employment ever due to a mental disorder." (T 189) Dr. Mendelson's observation concerning Plaintiff's lack of mental health treatment support's the ALJ's statement discrediting Plaintiff for the "degree of medical treatment required" for his impairments. (T 21)

In addition, although the ALJ did not couch his statement concerning Plaintiff's lack of medical treatment in terms of Plaintiff's failure to follow a prescribed course of medical treatment, this court finds that Plaintiff's well-documented failure to take his medications militates against his credibility as to the severity of his impairments.[13] Plaintiff reported to Dr.

---

[12] Specifically, she found that Plaintiff is not restricted in his activities of daily living, that he has no difficulties maintaining social functioning, only mild difficulties maintaining concentration, persistence, or pace, and that he has had no episodes of decompensation. (T 170)

[13] A claimant may be denied benefits pursuant to [the regulations] if the [Commissioner] finds that he failed to follow

Kanter that he has been prescribed a variety of medications, including Paxil, Depakote, Neurontin, and Meclizine, but that Plaintiff "decided not to take any of these medications and only takes asprin and Zocor." (T 121).[14]

There is substantial evidence to support the ALJ's rejection of Plaintiff's complaints of pain and other subjective symptoms. See Allen v. Sullivan, 880 F.2d at 1203 (ALJ properly discredited a plaintiff's subjective complaints of pain when he specifically articulated at least three reasons for rejecting such testimony). Accordingly, Plaintiff's argument on this issue is without merit.

**E.**   Plaintiff also submits that a remand is required under sentence six of 42 U.S.C. § 405(g) due to the presentation of new evidence.

 To obtain a remand to consider new evidence, a claimant must establish that: (1) there is new, non-cumulative evidence; (2) the evidence is material in that it is relevant and probative so that there is a reasonable possibility that it would change the

---

prescribed treatment and that if he had followed the treatment, his abillity to work would be restored.  Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)(citing Patterson v. Bowen, 799 F.2d 1455, 1460 (11th Cir. 1986).

 [14]Plaintiff also reported to Lance E. Jackson, M.D., an ear and sinus physician, that he "stopped Paxil" and takes only Zocor. (T 151) Dr. Jackson's report documenting Plaintiff's failure to follow medical treatment is dated October 25, 2000. In addition, Plaintiff reported to Richard Hoefer, M.D. on January 10, 2001, that he was "unwilling to pursue a variety of different medical treatments suggested by his neurologist." (T 182)

administrative results; and (3) there is good cause for failure to submit the evidence at the administrative level.  <u>Cannon v. Bowen</u>, 858 F.2d 1541, 1546 (11th Cir. 1988)(citation and internal quotation marks omitted).

Plaintiff argues that an October 15, 2004 MRI of the cervical spine evidencing disc stenosis, herniation, and protrusion warrants a remand for further administrative consideration.  The evidence Plaintiff discusses, however, does not appear to have been made a part of the administrative record.  Plaintiff states, "Attached to this brief is a copy of medical evidence obtained subsequent to the ALJ's determination." (Dkt. 5 at 31-32) There are no attachments to Plaintiff's brief.   The Commissioner has not responded to Plaintiff's argument concerning new evidence.

As Plaintiff has failed to furnish a copy of the medical record which Plaintiff argues warrants a remand, Plaintiff's argument cannot prevail.

Accordingly, a remand under sentence six of the Act is not warranted.

## <u>Conclusion</u>

While concluding that remand for further fact-finding is necessary due to errors of law committed at the administrative level, this Court expresses no views as to what the outcome of the proceedings should be.  At the reopened hearing, each party should

have the opportunity to submit additional evidence on the issues remaining for determination.

Accordingly and upon consideration it is **RECOMMENDED** that:

(1)  The decision of the Commissioner be **REVERSED** and the case be **REMANDED** for further proceedings and consideration consistent with the foregoing; and

(2)  The Clerk of Court enter final judgment pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand."  <u>Shalala v. Schaefer</u>, 509 U.S. 292, 302-03 (1993); <u>Newsome v. Shalala</u>, 8 F.3d 775, 779-80 (11th Cir. 1993).

Dated: July 22, 2005

ELIZABETH A JENKINS
United States Magistrate Judge


**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  <u>See</u> 28 U.S.C. 636(b)(1).